IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. PX-22-91 |
| | * | |
| MICHELLE PEEBLES, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

## SENTENCING MEMORANDUM OF THE UNITED STATES

The Government offers this memorandum in aid of sentencing Michelle Peebles ("Defendant"), scheduled for October 8, 2025, and submits that a guidelines sentence followed by a 2-year period of supervised release is the appropriate resolution to this case.

### I.    BACKGROUND

The Defendant participated in an extensive and long-running scheme to defraud Walter Reed National Military Medical Center ("Walter Reed") of over a million dollars' worth of specialized Clinical Documentation Improvement ("CDI") medical coding services which Walter Reed paid for but never received.

The Defendant was charged via indictment on March 17, 2022 and, on May 9, 2024, pled guilty to committing Wire Fraud in violation of 18 U.S.C. § 1343.

The Defendant and co-conspirator Akbar Masood ("Masood") were both employees of Infused Solutions, a U.S. Government contractor which provided services to Walter Reed and other U.S. Government entities. Without the knowledge of Infused Solutions, the Defendant and Masood created a fictitious company called HMA Solutions LLC ("HMA"), which had no employees and no actual business operations. Masood used his position within Infused to award

1

a subcontract from Infused to HMA. To make HMA appear to be a legitimate company and to justify the awarding of a CDI coding services contract to HMA, the Defendant and Masood appropriated the names and credentials of actual medical coding personnel and falsely claimed them as HMA employees. In fact, HMA had no employees and was entirely the fictitious creation of Masood and the Defendant.

The Defendant and Masood never revealed their role in creating HMA to Infused. In addition to appropriating the names and credentials of several coders to hold out as HMA employees, the subcontract itself was signed by the Defendant and Masood in the name of a particularly well-known and highly-credentialed individual in the medical coding community (Victim 1). The Defendant and Masood created an email account in the name of this coder, "[Victim 1]@HMAsolutionsllc.com" and regularly used this account to correspond with Infused and Walter Reed personnel pretending to be Victim 1 speaking on behalf of HMA. The Defendant even had conversations with herself and Masood from the Victim 1@HMAsolutionsllc.com account, with Infused personnel copied so that the back-and-forth would be seen by Infused personnel so they would continue to believe that HMA was a legitimate subcontractor. Below is one such example where the Defendant, using an email address purporting to belong to Victim 1, emailed Infused office manager Kristine Gillespie and copied her *own* Infused account.



In this particular example, the Defendant, using Victim 1's name, is falsely claiming that four additional coders, victims 2-5, have performed hundreds of hours of CDI coding work, when in fact none of these individuals worked for HMA or had ever heard of HMA. The Defendant, through the Victim 1 alias, submitted numerous invoices to Infused every month for CDI coding services purportedly performed by Victims 2-5. The invoices were then forwarded by Infused to Walter Reed and paid.

To further elaborate on how the scheme worked, Exhibit 1 contains a sham negotiation at the outset of the subcontract between Infused and HMA in which the Defendant, from her Infused email account, purportedly "negotiates" with HMA (actually the Defendant herself

using [Victim 1]@HMAsolutionsllc.com) the rate for the CDI coders. Masood is copied on many of these emails and weighs in on the correct rate HMA should be charging, all the while aware of the ruse and advising the Defendant on what to say.

The Defendant and Masood effectively deceived Infused into believing HMA was a real company with real CDI coders doing real work for approximately 18 months. The Defendant and Masood invoiced Infused Solutions for over a million dollars' worth of CDI coding work—invoices that were passed along to Walter Reed and subsequently paid into a bank account at TD Bank controlled by Masood himself.

## II.     LEGAL FRAMEWORK

A sentencing court must follow the three-step process set forth by *Gall v. United States*. *See* 522 U.S. 38 (2007). First, the court must properly determine the Guideline range. *See id.* at 49 (citing *Rita v. United States*, 551 U.S. 338, 347-48 (2007)). Second, the court must determine whether to apply any of the guidelines' departure policy statements to adjust the Guideline range. *See id.* at 49-50. Third, the court must consider all the factors set forth in 18 U.S.C. § 3553(a), including whether a variance—a sentence outside the advisory guideline system—is warranted. *See id*.

The statutory factors for the court's consideration under 18 U.S.C. § 3553(a) include: 1) the nature and circumstances of the offense and history and characteristics of the defendant; 2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public and provide the defendant with needed services; and 3) the kinds of sentences available and the need to avoid unwarranted sentencing disparities. "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation,

4

any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4; *see also* 18 U.S.C. § 3661. "If the district court decides to impose a sentence outside the guidelines range, it must ensure that its justification supports 'the degree of the variance.'" *United States v. Evans,* 526 F.3d 155, 161 (4th Cir.), *cert. denied,* 555 U.S. 977, 129 S.Ct. 476, 172 L.Ed.2d 341 (2008) (quoting *Gall,* 552 U.S. at 51). The district court is given "some latitude," and "a degree of deference," to tailor a particular sentence to the circumstances. *United States v. Green,* 436 F.3d 449, 456-57 (4th Cir. 2006); *United States v. Moreland,* 437 F.3d 424, 433 (4th Cir. 2006).

### III. ARGUMENT

The Defendant and Masood worked together to deceive Infused Solutions and defraud Walter Reed of over a million dollars they paid for medical coding work that was not performed. It was an exceptionally serious crime that spanned approximately 18 months. The crime required the appropriation of credentials and identities of multiple additional victims.

The evidence shows, however, that Masood coached and recruited the Defendant, who did not have the expertise necessary to carry out the CDI coder scheme herself. The evidence also shows that almost all the funds stolen through this fraud went directly to Masood himself, and that Masood paid the Defendant less than $200,000 directly from his own TD Bank account into which the fraudulently-obtained payments were received. Throughout the scheme Masood maintained financial control of HMA and, the Government believes, made all the executive decisions related to HMA.

Additionally, the Defendant has a very limited criminal history and does not appear likely to reoffend based on all the information available to the Government. These aggravating and mitigating factors, taken together, support the proposed sentence rather than a variance upward

5

or downward.

    **a. Guidelines**

The Government calculates the U.S.S.G. in line with the PSR in this case.

    **b. Departure**

No appropriate departures have been identified.

    **c. Factors under 18 U.S.C. § 3553(a)**

Under the factors set forth in 18 U.S.C. § 3553(a), a guidelines sentence is sufficient, but no greater than necessary, to achieve the goals of sentencing.

    **i. History and Characteristics of the Defendant and Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))**

    *1. History and Characteristics of the Defendant*

The Defendant has no criminal history.

    *2. Nature and Circumstances of the Offense*

The Defendant's actions were blatantly dishonest and criminal. Law enforcement expended considerable resources trying to untangle the various frauds and deceptions related to medical coding services paid for by Walter Reed. Taxpayer money enriched Masood and, to a lesser extent, the Defendant, to the tune of $1,243,824 in total based on the CDI coder invoices alone. The Stipulation of Facts also mentions other ways the Defendant manipulated the SBA's 8(a) Business Development Program and agreed with other individuals to defraud the Government of coding services not performed on other contracts. PSR ¶¶ 12-14.

Masood's conduct was certainly more culpable as the initiator and director of the HMA scheme, but the Defendant's criminal conduct was nevertheless serious.

    **ii. Need for the Sentence to Accomplish the Purposes Laid Out in 18 U.S.C. § 3553(a)(2), including just punishment, deterrence, and to**

> **protect the public.**

The Government believes that the recommended sentence meets the goals specified in 3553(a)(2). Specifically with regard to deterrence, the Government believes the goal of specific deterrence of the Defendant from further criminal conduct has likely been met—she does not seem likely to repeat this conduct. The goal of general deterrence remains a factor and would be served by the proposed sentence.

> iii. **Need to Avoid Unwarranted Sentencing Disparities Among Defendants with Similar Records and Similar Conduct (18 U.S.C. § 3553(a)(6))**

The Government is sensitive to the fact that Masood, the far more culpable individual and the one who enriched himself the most through this fraud, will not face consequences for it. However, because of this, the Defendant and Masood are not similarly situated under 18 U.S.C. § 3553(a)(6), which applies only to defendants with similar records who have been found guilty of similar conduct.

This factor did not influence the Government's recommendation.

## IV.    RESTITUTION

The Government is not seeking restitution from the Defendant in this case.

## V.    CONCLUSION

For the reasons stated, as well as those presented at the sentencing hearing, the Government submits that a guidelines sentence followed by a term of 2 years of supervised release is the appropriate resolution to this case.

                                       Respectfully Submitted,

                                       Kelly O. Hayes
                                       United States Attorney

By:      /s/ Darren S. Gardner
            Darren S. Gardner
            Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice of such filing to all users.

/s/ Darren S. Gardner
Darren S. Gardner
Assistant United States Attorney